[Civ. No. 4514. Third Appellate District.—April 18, 1932.]

HAZEL HICKS, Respondent, v. MARTIN SULLIVAN et al., Appellants.

Ray Manwell for Appellants.

Frank A. Duryea for Respondent.

THE COURT.—This is a suit for damages for injuries received as a result of the negligent harboring of an ill-tempered and dangerous dog.

The evidence satisfactorily shows the defendants owned and kept in Alturas a medium-sized wolfhound which was over four years of age. The dog had previously attacked other persons. It was known to the neighbors and school children to be ill-tempered. It had a savage nature. It was feared by many as a cross and dangerous dog. The defendants knew of this disposition of the dog. At the request of the chief of police they had provided the dog with a leather muzzle. It was, however, permitted to run at large.

On the occasion of the attack by the dog which is involved in this suit, the plaintiff was crossing the street in the vicinity of the defendants' residence. The dog, without provocation, came barking and lunging at her. She fought it with her shopping-bag. In the encounter she fell and

seriously injured her hip. The court, sitting without a jury, rendered a judgment for the plaintiff in the sum of three hundred dollars. From this judgment the defendants have appealed.

Regarding the encounter, the plaintiff testified:

"This dog just came running and barking right at me, and I spoke to the dog and he kept coming, and I seen that he was mad, and I jumped to one side, and he jumped back and made another lunge at me. . . . I struck him with the shopping bag, and then I jumped to one side. I fought him for, . . . it seemed to me a long time. . . . He just kept coming at me, and his eyes were green, looked green to me, and the froth was coming out of his mouth. . . . He kept on making advances toward me, lunged at me, just seemed to come right at my throat, and I knocked him off with this bag. . . . It seemed to me like something broke loose in my side, and I fell to the ground." A man came to her rescue, and the dog was driven away. The plaintiff was taken home. She sustained a serious injury to her hip from her fall which was occasioned by the encounter with the dog. The court adopted findings to the effect that she was injured "by reason of the vicious attack of the defendants' dog". The court also found that while the dog was muzzled, the defendants had knowledge of the fact that it had previously viciously attacked another woman.

The defendants contend that the findings and judgment are not supported by the evidence for the reason that it does not appear the plaintiff was actually bitten by the dog, and because the dog does not appear to have been a vicious or dangerous animal.

There is no merit in either of these contentions. The evidence is adequate to prove not only that the dog was vicious and ill-tempered, but also that the defendants knew he had a savage disposition. The dog had previously attacked another woman. It was also accustomed to chase and bark at the school children. The chief of police warned the defendants and advised them to muzzle the dog. This was done. Yet, knowing this tendency and disposition of the dog, it was permitted to run at large.

Most dogs are usually considered domestic, companionable, good natured and harmless. (*Domm* v. *Hollenbeck*, 259 Ill. 382 [Ann. Cas. 1914B, 1272, 102 N. E. 782].) They are

valuable as watch dogs and for the care of stock. The law recognizes a property valuation in dogs and authorizes the ownership and possession of such animals. Some dogs reserve their friendship for their masters or the members of their own household. They are surly and antagonistic toward strangers. When an owner has reason to believe his dog is savage, ill-tempered, mischievous or dangerous to persons and property, he may be kept only at the owner's risk, who will become liable for damages resulting from the conduct of the dog which exhibits such known traits or character. Notice that the disposition of a dog is such that it is likely to commit injury or cause damage is sufficient to charge the owner with liability for its conduct. (*Laverone* v. *Mangianti*, 41 Cal. 138 [10 Am. Rep. 269]; *Kippen* v. *Ollasson*, 136 Cal. 640 [69 Pac. 293]; *Gooding* v. *Chutes Co.*, 155 Cal. 620, 624 [18 Ann. Cas. 671, 23 L. R. A. (N. S.) 1071, 102 Pac. 819]; 3 C. J. 97, sec. 330; 1 R. C. L. 1116, sec. 59.) In 3 C. J., at page 97, it is said: "When it is once established that the dog is of a vicious and mischievous nature and that the person owning or keeping it had knowledge of that fact, the same responsibility attaches to the owner to keep it from doing mischief as the keeper of an animal (which is) naturally ferocious would be subject to, and proof of negligence on the part of the owner of the dog is unnecessary." In 1 Ruling Case Law, at page 1116, the same principle is thus expressed: "In case of injury the gravamen of the action is knowledge of the owner that the beast was the possessor of vicious or mischievous propensities. Negligence or lack of care on the part of the owner in keeping or restraining the animal need not be shown." It is negligent, however, to permit an ill-tempered dog to run at large in a community. Society is entitled to be protected against wild or vicious animals.

It is asserted the defendants are not liable in this case because the dog was muzzled and did not actually bite the plaintiff. There is no merit in this contention. One might claim with equal reason that the owners of the wolfhound are not liable because it did not devour the lady as the wolf did the grandmother in Little Red Ridinghood. It is not the laceration of the flesh only by the white fangs of a dog that creates liability. Any substantial damage to person or property which is the proximate result of the attack of

a dog with known vicious habits, bad tempered or mischievous traits may create liability on the part of the owner. A dog with the habit of chasing after, barking at or fiercely attacking horses may create a liability for damages for injuries sustained by the throwing of a rider as the result of such an assault upon a horse. In 3 C. J. 99, section 331, it is said: "Where the injury complained of is alleged to have resulted from a horse being frightened by dogs in the highway, the plaintiff is entitled to recover. . . . Actual biting of the horse need not be shown, it being sufficient if the dog ran after and barked at it."

In the present case the plaintiff was injured in attempting to defend herself against an unprovoked and ferocious attack of a vicious dog whose ill-tempered disposition was known to its master. It was a frantic encounter, as related by the plaintiff. She was terrorized. With green eyes and froth-covered mouth, the dog lunged at her throat. She fought it until she fell to the pavement and was injured. She was saved from the dog when a man arrived at the scene and drove the animal away. Surely the injury which the plaintiff received was the proximate result of her combat with the dog. The damages which she sustained are attributable to the assault of the dog and its known savage nature just as conclusively as though it had not been muzzled and succeeded in biting her. The mere nature of her injuries does not relieve the owners from responsibility.

In support of their contention that liability of the owner of the dog is incurred only when the complainant is actually bitten, the Statutes of California, for 1931, page 1095, is cited. This act provides in part: "The owner of a dog which shall bite any person . . . shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness." This statute does not purport to limit the recovery of damages actually suffered as the result of an attack by a savage dog, to the physical wound from biting. It creates a liability when the complainant is actually bitten without the usual necessity of proving the previous vicious character of the dog, or the knowledge of its dangerous habits on the part of the owner. It would be absurd to hold that a savage muzzled dog might knock a child down and claw it to death without creating a liability, if the

owner knew its vicious nature and yet permitted it to run at large. Moreover, this statute was not enacted until after the liability in this action was incurred.

The judgment is affirmed.