[Civ. No. 8086. Third Dist. Nov. 19, 1953.]

MARTHA G. HAGEN, Respondent, v. ALETTA LAURSEN et al., Appellants.

Geary, Spridgen & Moskowitz for Appellants.

DeCastle & Eymann and Toland C. McGettigan for Respondent.

VAN DYKE, P. J.—This was an action wherein plaintiff sought to recover damages from defendants for personal injuries suffered by her while a visitor upon defendants' property. She suffered injuries when two dogs owned by defendants which were playing about the defendants' premises ran against her, causing her to fall. She secured a judgment from which the defendants have appealed.

It appears that appellants were the owners of two Irish setters, one weighing about 45 pounds, the other about 35 pounds, and both being approximately 5 years old. These dogs were generally kept upon appellants' premises. When appellants were at home the dogs were usually in the basement of the home or on an enclosed porch. They were occasionally let run on appellants' property which was not fenced and so the dogs were on and off the appellants' premises while running about. That was the situation when respondent received her injuries. Appellants and respondent were neighbors and habitually exchanged social visits. They lived across a road from each other. On the occasion when plaintiff was injured the dogs were frolicking, occasionally going into the road and back to their home grounds. They romped and played with each other; would jump at each other, wrestle, run, roll over, pretend to bite each other, and generally indulge in the antics usual with dogs at play. Their actions were described as the average play of a dog. No one had seen them run into anyone while playing, before respondent received her injuries. They were not shown to have been more boisterous than dogs usually are. There was no evidence that these dogs were vicious. During the years that they had been observed there had been a time when one of them had reared up and placed his paws against a visitor, another when one of the dogs jumped on the shoulder of a man who came upon the premises and who ran. The dog did not bite or injure the man. At another time one of the dogs grabbed a man by the coat sleeve. But these instances were all that could be gathered over the years the dogs had been owned by appellants, and there was no claim, and could be none,

that the dogs were shown to have been vicious or apt to attack. In addition, such proclivities, if shown, were not being exercised at the time respondent was injured and were not the cause of injury.

Respondent was well acquainted with the dogs and had often observed them at play. At the time of the accident respondent had seen the dogs playing and while this was going on had gone across the road and onto the premises of appellants, where she stood conversing with a group of people, which included Mrs. Laursen and some relatives of respondent. The dogs were frolicking about, the women were talking; respondent stood with her back toward the area in which the dogs were for the moment at play and did not, therefore, see them approaching her. Others, however, including Mrs. Laursen saw the dogs coming, but no one said or did anything. One or perhaps both of the dogs while so playing and frolicking ran against the back of respondent's legs at about the knees, causing her to fall sharply to the ground and to suffer a broken hip and various less serious bruises and lacerations. There was nothing in the nature of an attack by either animal.

At the trial much reliance was placed by respondent upon what was claimed to be a violation of a Sonoma County ordinance having to do with the licensing and control of dogs, but in addition thereto it was respondent's theory that appellants, as owners of the dogs, were liable as for general negligence proximately causing her injuries.

We will first discuss this assignment of negligence, it being the contention of appellants here that as a matter of law the record fails to support a finding that they were so negligent.

It is lawful to keep dogs and, speaking generally, an owner or keeper is not liable for damage they do without having knowledge of an abnormal propensity of the dog to commit it. "There are certain domestic animals so unlikely to do harm if left to themselves and so incapable of constant control if the purpose for which it is proper to keep them is to be satisfied, that they have traditionally been permitted to run at large. This class includes dogs . . . While it is not impossible to confine dogs to the premises of their keepers or to keep them under leash when taken into a public place, they have been traditionally regarded as unlikely to do substantial harm is allowed to run at large, so that their keepers are not required to keep them under constant control." (Rest., Law of Torts, § 518, com. j, p. 40.) "A possessor or har-

borer of a domestic animal which, because it is of a class unlikely to do harm and difficult to confine, he is privileged to allow to run at large, and which he does not have reason to know to be abnormally dangerous, is not liable for any harm done by it while at large." (Rest., Torts, § 518, subd. (2).) "The actor as a reasonable man is both entitled to assume and required to expect that domestic animals will act in accordance with the nature of such animals as a class, unless he knows or should know of some circumstances which should warn him that the particular animal is likely to act in a different manner." (Rest., Torts, § 302, com. h.) ▇ Pursuant to these long-established rules found in the common law and in most, if not all, of the states of the Union, including California, it has always been necessary in a complaint seeking to recover damages for injuries caused by dogs to plead and prove that the injury was by some abnormal action, that is, abnormal with regard to the usual actions of these animals and that the owner or keeper knew of a tendency to the abnormality. ▇ It was not sufficient to allege the injury caused by the animal and that the owner had been generally negligent in the keeping or the controlling of the dog. "In the complaint in an action against the owner for injuries caused by his dog, it is essential to allege the vicious character or evil propensity of the dog and the owner's scienter. . . . The dog's bad character or evil disposition is not presumed. The view expressed in *Mason* v. *Keeling, supra,* [1699, 12 Mod. 332] that 'the law takes notice, that a dog is not of a fierce nature, but rather the contrary' is generally adopted. A dog is presumed to be tame, docile and harmless until the contrary appears. (Citing cases.) Harming a human being is regarded as contrary to a dog's nature. 'He errs contra naturam suam by biting or any serious misdoing, . . ..' (Beven, 'The Responsibility at Common Law for the Keeping of Animals,' 22 Harvard Law Rev. 465, 485." (*Olson* v. *Pederson,* 206 Minn. 415 [288 N.W. 856, 859].) The foregoing was said in a case declaring the insufficiency of the complaint to state a cause of action which alleged that the defendants owned and kept a certain dog and that while plaintiff was lawfully standing on the lawn of her home the dog jumped on her, causing her to fall and sustain personal injury. The same rule applies to cats, as appears from *Buckle* v. *Holmes,* 2 K.B. 125, 54 A.L.R. 89, a case brought to recover damages done by a cat in killing fowls on plaintiff's property. The rule is stated in a headnote as follows: "One who keeps a domestic animal is not

rendered liable by the mere fact that the animal does damage in following the natural propensity of its kind to do damage in certain circumstances, unless the animal is one for whose trespasses the owner is liable,'' it being held in the opinion that dogs and cats were not animals for whose trespasses there was owner liability. See, also, *Brown* v. *Moyer,* 186 Iowa 1322 [171 N.W. 297], a case where a large dog owned by the defendant ran out into the highway along which plaintiff was proceeding, striking her with such force and in such manner as to throw her violently to the ground. See, also, *Hicks* v. *Sullivan,* 122 Cal.App. 635, 638 [10 P.2d 516], where, quoting from 1 Ruling Case Law 1116, the court approved a statement of the rule as follows: " 'In case of injury the gravaman of the action is knowledge of the owner that the beast was the possessor of vicious or mischievous propensities. Negligence or lack of care on the part of the owner in keeping or restraining the animal need not be shown.' '' See, also, *O'Brien* v. *Gateway Stables,* 104 Cal.App.2d 317 [231 P.2d 524] (inexperienced rider falling from spirited runaway horse) ; *Brown* v. *Willard,* 303 N.Y. 727 [103 N.E.2d 343] (plaintiff knocked down by mare in exercise yard) ; *Fine* v. *Hiller* (La.App.), 146 So. 50 (plaintiff knocked down by dogs let loose to exercise).

 Giving full play to the rule that negligence is usually a question of fact, still negligence cannot be here predicated upon any act or omission of appellant Alletta Laursen. The ground of liability here is reasonable anticipation of the occurrence and reasonable opportunity to act. Dogs at play rarely run against stationary objects whether tree, post or person. They generally look where they are going and this is self-preservation. We are unable to see where in the situation confronting her Alletta Laursen could reasonably be held to anticipate that the playing dogs would blindly run into a group of people and knock one of them down. We are somewhat persuaded to this view by considering that if there was danger here it was as well known to respondent and to each member of the group as to Alletta Laursen. No superior knowledge was possessed by her. And she had no superior opportunity to take preventive action. Here was misadventure pure and simple without liability, as was held in *Eigner* v. *Race,* 54 Cal.App.2d 506 [129 P.2d 444], a similar case.

We reach the same result if we consider the status of respondent. She was a licensee to whom appellants owed the duty to refrain from active negligence (*Oettinger* v. *Stewart,*

24 Cal.2d 133, 138 [148 P.2d 19, 156 A.L.R. 1221]) and to warn of existing conditions unknown to her which were dangerous. (Rest., Torts, § 342.) If there was danger it was because the dogs were playing in the area where respondent stood. Knowing just as well as appellants of this situation she went upon their property and was hurt from this known danger. In effect she says she had a right to say to her neighbors, "take up your dogs for I want to visit." She had no such right. When she went where she did, knowing the danger, appellants owed her no duty to protect her from the risk she elected to run. Apparently no one in the group sensed danger. Under the circumstances we hold respondent failed to prove negligence unless by virtue of violation of a Sonoma County ordinance next discussed.

At the time of the accident to respondent there was in force ordinance No. 215 of the county of Sonoma. The ordinance provided for the registration and licensing of dogs in the county, for the impounding and killing of unlicensed dogs running at large, created the office of poundmaster, provided for maintenance of a pound for the care and disposition of impounded dogs, and from fees, fines and charges set up a fund wherewith to compensate persons whose livestock or poultry were damaged or killed by roaming dogs. The ordinance is somewhat lengthy, containing some 21 sections, all having to do with the matters listed, but in sections 5 and 6 the following appears:

"It shall be unlawful and a misdemeanor for any person to permit any dog owned by him to roam off the premises where same is kept or harbored, between the hours of six o'clock P. M., and six o'clock A. M., of the day following and all persons owning or harboring dogs shall keep said dogs confined either on leash or chain in any building, in any yard with enclosure sufficient to prevent such dogs from escaping.

"It shall be unlawful and a misdemeanor for any person to permit or cause any dog to run on the lands of another, whereon poultry or livestock is kept without the permission of the owner of such lands."

Respondent was injured shortly after 6 o'clock p. m. She claims that appellants were guilty of violation of the ordinance and that this *per se* negligence proximately caused her injuries, she being one of a class for whose protection the ordinance was intended. These claims are contravened by appellants and their contentions must be sustained. ▮ The conditions under which actionable negligence may be predi-

cated on violation of a statute or ordinance are well stated in *Nunneley* v. *Edgar Hotel,* 36 Cal.2d 493, 497 [225 P.2d 497]. It was there held that not every infraction of the statute will result in civil liability; that violation of a statute constitutes actionable negligence only as to those persons for whose benefit or protection the statute was enacted; that violation of a statute by failing to do a required act results in liability only if the harm which the violation causes is that from which it was the purpose of the enactment to protect. Quoting from *Flynn* v. *Gordon,* 86 N.H. 198, 200 [165 A. 715], the court said: " 'The violation of a statute or ordinance becomes an actionable wrong only when the consequences contemplated by the provision in question have actually resulted from its violation. If none of the consequences which the enactment was designed to guard against have resulted from its breach, such a breach does not constitute an actionable wrong even though some other injurious consequence has resulted. It is not enough for a plaintiff to show that the defendant neglected a duty imposed by statute and that he would not have been injured if the duty had been performed. He must go further and show that his injury was caused by his exposure to a hazard from which it was the purpose of the statute to protect him.' " (See, also, *Satterlee* v. *Orange Glenn School Dist.,* 29 Cal.2d 581 [177 P.2d 279]; *Harris* v. *Joffe,* 28 Cal.2d 418 [170 P.2d 454].)"

▮ It is not claimed that appellants' dogs were unlicensed, but it is claimed that appellants were guilty of violating sections 5 and 6 of the ordinance which we have quoted. The evidence shows that at about 5 o'clock Alletta Laursen released the dogs to exercise. These dogs occasionally ran off appellants' premises and on to the public road between the homes of appellants and respondent, returning again to appellants' premises. But by these actions the dogs were not roaming off the premises where they were kept or harbored. Leaving appellants' premises momentarily and returning thereto in the course of exercise and play did not constitute that roaming off the premises prohibited by the ordinance. Further if by way of argument it be assumed that the described action of the dogs violated the provisions prohibiting roaming off the owners' premises yet it was not this roaming off the premises that caused the injury. When the injury occurred these dogs were on the premises of appellants. The damage was not done while they were off the premises. Turn-

ing to the rest of section 5 of the ordinance, however, respondent asserts and appellants deny that appellants violated the ordinance in that they did not at and after six o'clock p. m. on the day of the injury and while respondent was on their premises keep their dogs confined "either on leash or chain in any building, in any yard with enclosure sufficient to prevent such dogs from escaping." This is a strange provision, the rest of the ordinance considered. The first part of the sentence made it unlawful for a person to permit his dog to roam off the premises where the dog was kept between certain hours; and the remainder of the sentence appears to impose the added precautions that during the same period dogs shall be confined on leash or chain in a building or enclosed yard. If that be the meaning of the closing clause, the first part of the sentence which prohibits roaming would be needless. Taking the ordinance as written, however, and construing it literally as requiring dogs to be chained and also kept in a building or enclosed yard, nevertheless visitors to appellants' premises are not within the protective purposes of the ordinance. It is clear that the purpose of this particular section of the ordinance is to prevent dogs from leaving the premises where they are kept during the night hours. ▮ Considering the ordinance as a whole it is clear that the only purpose of section 5 was the prevention of night roaming. This was to protect livestock against depredation by roaming dogs. It may have been the intention also to protect people traversing the highways at night or going about on their own property where the dogs might be roaming. ▮ But surely there was no intent or purpose here of protecting persons who might be visitors or invitees, business or otherwise, of the dogs' owners, for if such had been the purpose then around-the-clock protection would have been provided for, since to such persons the selected hours were those during which they least needed protection. Since respondent failed to show that she was within the class for whose protection the ordinance in question was enacted, she has failed to show actionable negligence on the part of appellants, assuming a violation by them of the ordinance provisions we have been discussing.

The judgment appealed from is reversed.

Schottky, J., and Peek, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 13, 1954. Carter, J., was of the opinion that the petition should be granted.