[Civ. No. 16271.   First Dist., Div. Two.   May 18, 1955.]

HARRIET BALEY, Appellant, v. J. F. HINK AND SON (a Corporation) et al., Respondents.

John D. Martin and Ricksen, Freeman & Johnson for Appellant.

Barfield & Barfield, Harris, Darter & Older and Cyril Viadro for Respondents.

KAUFMAN, J.—This is an appeal by plaintiff from a judgment of nonsuit in an action for personal injuries sustained while plaintiff was a customer in the department store of respondent, J. F. Hink and Son, in Berkeley. A nonsuit

was likewise granted on plaintiff's suit against the defendant Doris Potter, a customer in the aforesaid store, whose leashed dog was alleged to have been the cause of appellant's fall from which she suffered serious personal injuries.

Appellant's complaint against respondent Hink alleged that appellant was a business invitee; that respondent Doris Potter owned a dog which she knew to be lively, mischievous and frolicsome; that respondent store negligently consented to respondent Potter's bringing said dog into the store and into an aisle thereof when appellant was present and negligently consented and allowed respondent Potter to "guide and control said dog in such a careless, negligent and unlawful manner, that it was carelessly, negligently and unlawfully caused, permitted and allowed by respondent Potter, to collide with and trip" appellant and throw her to the floor with great force and violence. It was further alleged that appellant was unable to arise, and that respondent Hink was negligent in providing her with assistance, thereby exacerbating the injuries sustained in the fall. Respondent Hink generally denied all the charging allegations and pleaded contributory negligence and unavoidable accident. Respondent Potter likewise denied the allegations of the complaint and pleaded negligence of respondent Hink as the sole proximate cause; negligence of appellant as the sole proximate cause; contributory negligence and unavoidable accident.

The case was presented before a jury, but motions for nonsuit in favor of both respondents were granted at the close of appellant's case on the ground that there was no evidence of negligence on the part of respondent Hink proximately causing or contributing to the injuries of appellant and none on the part of respondent Potter proximately causing or contributing to the happening of the accident.

Although appellant pleaded the unruly and mischievous nature of the dog, there was no attempt made at the trial to show the disposition of the dog or any previous knowledge of such disposition by either respondent. Appellant's theory at the trial was simply negligence in bringing the dog to an improper place and carelessly controlling and guiding it while there. Most of the cases involving dogs that have been previously decided in this state are not helpful, since they are concerned with proof of prior knowledge of eccentricity, traits, or disposition of the particular animal.

Appellant testified that she entered the respondent store with the intention of making a purchase at about 5 p. m. She

made a purchase in the Baby Department in the rear of the store. She then went to the gift wrapping desk at the left of the store to pick up her purchase. From there she had walked about 10 or 15 feet up the center aisle when she suddenly fell to the floor. She said that she felt something hit her legs and she went down. Appellant was unable to rise. Immediately when she landed she saw respondent Potter with the dog on a leash to her right. The dog appeared to be a springer. Respondent Potter told her to lie still until help would come. People from the store brought ammonia and placed it under her nose as she felt she would faint. They did not move her from the floor, nor did they put any covering over her. She thought it was about a half hour before the ambulance arrived to take her to the hospital.

Just prior to the accident appellant had been proceeding to meet her sister and was looking straight ahead. She was not looking at the floor, but the floor was within her range of vision. Appellant was wearing glasses with corrective lenses which brought her vision to normal. She would glance to the side at the merchandise as she moved along the aisle. Appellant was walking when she felt something hit her legs and she went down. She did not feel it with just one of her legs. She believed the dog was reddish-brown in color. Upon objection the court struck out the following answer given in cross-examination:

"Q. And you determined that (the dog was a springer) while you were on the floor did you not?

"A. Well, the dog was at the side of me then, when it hit me. I didn't see the dog when it hit me."

The answer was stricken on the ground that it was the opinion and conclusion of the witness. Appellant contends that this was erroneously stricken, for although appellant had not previously seen the dog, she was capable of identifying what hit her by faculties other than sight.

Respondent Potter testified that the dog was a cross between a springer and a cocker and that it was completely black in color. She had it on a leash about 6 feet in length attached to the dog's collar. She was in the vicinity of appellant when she fell. Respondent Potter testified as follows:

"Q. And you say you were in contact with Mrs. Baley when she fell? A. When she fell; and when she fell, when she hit me, yes.

"Q. When she hit you? A. She fell by herself.

"Q. She fell by herself? A. That is right.

"Q. And she hit you after she fell? A. No, before.

"Q. Before, and what were you doing at that time? A. I was walking toward the front of Hink's.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. And when she fell, where did she fall with respect to you? A. Oh, I would say she cleared me about 2 feet, because I know there was a space as I watched her there, as I looked there was a space of light between us, 2, I would say 2 feet.

"Q. Was she closer to the front or closer to the back of Hink's when she fell? A. Nearer the back.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. And your dog was in the same area? A. The dog was in front of me."

Respondent Potter testified that Mrs. Baley was unable to get up and she told her that the sensible thing to do was to go over to Herrick Hospital and have it X-rayed. Respondent stated that she had no conversation with anyone about appellant falling over her dog, and that she did not tell Mrs. Baley or any police officer that she was sorry about it, and not to worry that everything would be taken care of. She said that she was involved in this thing but she was not responsible, that she was positive her dog had nothing to do with it.

Respondent Potter followed appellant to Herrick Hospital. Appellant's sister and nephew arrived while appellant was still in Herrick Hospital. It was then decided to send appellant by ambulance to Permanente Hospital. Respondent Potter drove her own car over to Permanente and waited in the reception room.

Miss Potter also testified that appellant was in the respondent store about one half hour after the accident before the ambulance arrived, but stated that the employees brought out a stretcher and placed her on it, covering her with a blanket which she threw off, saying she was too warm. There were several people of Hink's around, one brought a pillow, others brought smelling salts and water.

Miss Potter testified to a conversation with Mr. Winston from the Johnson Bureau of Investigation. He asked her if she knew Mrs. Baley was still in the hospital and then asked if she carried insurance to cover this sort of thing. She said she carried insurance but didn't know if it covered this sort of thing and referred him to her insurance representative. The investigator then told her that she had said everything would be taken care of. She explained that Mrs. Baley had

been worried about her car being overparked, and she had said, "Everything will be taken care of; parking, overparking is not a serious crime." She also said "Everything will be taken care of, just relax and take it easy." The investigator told Miss Potter that the police report showed that she said everything would be taken care of, and she replied that she had only answered police questions as to her name, address and telephone number. She did not talk to the police about the dog.

Arthur Winston, the investigator, testified that he endeavored to find out from Miss Potter what she meant by "everything would be taken care of," and that "she said that her dog had caused Mrs. Baley to fall." He had previously introduced himself, had told her where he was from and had given her his card.

Harry Cook, a nephew of appellant, saw Miss Potter at Herrick Hospital. She told him that "she couldn't explain the action of the dog, how it did happen, that it was just an unfortunate action of the dog getting loose." She then said that she didn't mean loose in the way she said it. She admitted that the dog was involved, but did not give him any explanation of how the dog was involved.

Respondent Potter when called under Code of Civil Procedure, section 2055, stated that she did not talk to Mr. Cook about the dog tripping Mrs. Baley, that she did not talk to him about the dog at all, that she purposely avoided talking about the accident. He asked her what kind of dog it was and she told him it was a cross between a spaniel and a springer.

Dr. Thomas Ivers testified that appellant was admitted to Permanente Hospital on November 7, 1951, and that she gave him a history of having fallen in Hink's Department Store when a dog ran between her legs. She developed pneumonia and surgery had to be delayed until her recovery from that illness. The doctor stated that the failure to cover appellant while she was lying injured on the floor could be a contributing cause of the pneumonia.

Appellant contends that there was sufficient evidence of negligent conduct on the part of respondent Potter which required submission of the case to the jury. ■ In ruling on motion for nonsuit, the trial court must assume that all relevant evidence favorable to plaintiff is true, and all presumptions, inferences and doubtful questions must be construed most favorably toward plaintiff and interpreted most strongly

against defendant. (16 Cal.Jur.2d 209, § 45.) And testimony elicited under section 2055, Code of Civil Procedure, is to be weighed for plaintiff insofar as it is favorable, and is to be disregarded insofar as it is unfavorable. (16 Cal.Jur.2d 212, § 46.)

Although appellant complains of the order striking out the statement that the dog was at appellant's side when it hit her, as a conclusion because she had not previously seen the dog, there is still considerable evidence in the record to the effect that appellant was caused to fall by contact with the dog. Winston testified that Miss Potter told him the dog caused appellant to fall. Harry Cook stated that she told him that the dog was involved in the accident. The doctor reported that appellant told him that she fell when a dog ran between her legs in Hink's Department Store. Miss Potter admitted to being very close to appellant when she fell, as she cleared her by about 2 feet.

The dog in the present case was not a free roaming animal as was true in *Hagen* v. *Laursen,* 121 Cal.App.2d 379 [263 P.2d 489], where a dog at play ran into a group of people knocking one down, and it was held that this action of the dog could not have been anticipated. Here the dog was not on its home premises, or out of doors on the street, as was the case of *Eigner* v. *Race,* 54 Cal.App.2d 506 [129 P.2d 444], where a great Dane weighing 120 pounds held on a leash by defendant's 12-year-old daughter suddenly turned around when plaintiff spoke to the girl. Plaintiff was behind the girl and the dog. When the dog turned it brushed against the plaintiff, throwing her to the sidewalk. It was there held that the ordinance requiring a dog to be on a leash in the hands of a person capable of controlling it was not the proximate cause of the accident, since it would have occurred even if the dog had been in charge of an older and stronger person. Here, however, we have a small dog on a leash held by an adult who is charged with the duty of keeping it under control in a place where people are expected to have their vision distracted by the merchandise on the counters and are entitled to assume that the aisles are free of obstructions. Reasonable care in bringing a small dog on a leash into such a setting demands constant alertness and freedom from distraction on the part of the dog owner. If, therefore, there is evidence that in such a place, a dog on a leash runs between the legs of another customer who is walking in the aisle of the store, that in itself would be some evidence of lack of

care and watchfulness and control on the part of the owner which would place on her the burden of explanation. It does not appear that appellant's evidence herein is subject only to the inference that she was contributorily negligent as a matter of law. Therefore the question of contributory negligence would be for the jury.

Respondent discusses the testimony of appellant's nephew Cook, pointing out that although he first testified that Miss Potter couldn't explain to him the action of the dog, that it was just an unfortunate accident of the dog getting loose, he later admitted that she said no such thing, that he meant that she had no definite explanation of the accident, other than that the dog was involved. Respondent says this may create a conflict with Miss Potter's testimony that the dog was not involved, but does not prove that she was negligent in controlling the dog. ▉ However, if the admission that the dog was involved, which must be taken as true on a motion for nonsuit, is coupled with the inference favorable to plaintiff arising from Miss Potter's statement to the investigator that the dog ''caused'' the accident, there would seem to be evidence from which it can be inferred that Miss Potter knew that she had been remiss in controlling her dog. Miss Potter's conduct in following appellant from Herrick Hospital on to Permanente Hospital even though appellant's relatives had already arrived upon the scene at Herrick, would appear to be a further admission by conduct of a knowledge that the dog was involved in the accident. It is true that this particular conduct of Miss Potter is just as open to the inference that she was an unusually charitable and solicitous person, but in weighing the evidence on a motion for nonsuit, the inference most favorable to plaintiff must be drawn.

Respondent says that the testimony of Dr. Ivers in which he related the history that a dog had run between the legs of appellant is a self-serving declaration, and must be disregarded because appellant herself admitted that the accident happened so quickly that she could not explain how it happened. These statements are not necessarily in conflict. ▉ If inadmissible hearsay evidence is admitted without objection, it has the same weight to prove the fact to which it relates as admissible evidence, and it may be sufficient to establish a fact or support a finding. (19 Cal.Jur.2d 238 § 474; *Keim* v. *D. B. Berelson & Co.*, 105 Cal.App.2d 154 [233 P.2d 123].) Respondent's counsel brought out this self-serving declaration on cross-examination of the doctor, and

since he did not ask that it be stricken, it remains in the record.

We conclude that the nonsuit in favor of respondent Potter was improperly granted.

Appellant contends that the trial court also erred in granting a nonsuit in favor of respondent J. F. Hink & Son, basing his argument principally upon the proposition that under the rules of general negligence liability is imposed for bringing an animal into an improper place, and for the act of improperly permitting another to do so in premises of proprietorship and control. Appellant cites *Weaver* v. *National Biscuit Co.*, 125 F.2d 463, a case of a docile horse, negligently permitted upon a public street in a populous city, which playfully injured a minor, and *Dickson* v. *McCoy*, 39 N.Y. 400, cases which recognize the "improper place" rule and impose liability for negligently permitting animals to be where they should not be and where it is to be expected "they will follow their untramelled natural propensities." In the present case, however, we do not have an animal free to follow its natural inclinations, as in the above cases, but rather one, which as far as respondent store is aware, is completely under the control of its owner. In *Barnett* v. *La Mesa Post No. 282*, 15 Cal.2d 191 [99 P.2d 650], cited by appellant, a nonsuit was reversed, for although there was no showing of prior knowledge of the disposition of the horse, which was taking part in a parade, negligence in the supervision and management of the animal was a matter for consideration of the jury. This case is distinguishable from the present case, for here the management of the dog was under the control of respondent Potter. Appellant contends that respondent store should have recognized that the dog on a six foot leash involved an appreciable risk of harmful consequences to another, and the evidence shows that respondent Potter had visited the store on prior occasions with this dog on the leash. While there was no showing of any prior conduct in controlling her dog on these occasions, or on this particular occasion, up to the moment of the accident, which would have put the respondent store on notice that she would be negligent in exercising such control, there was however notice to the respondent store either actual or constructive, of a dangerous condition. (See *Louie* v. *Hagstrom's Food Stores, Inc.*, 81 Cal.App.2d 601 [184 P.2d 708].) The general rule is expressed in American Jurisprudence 742, section 65, to the effect that a storekeeper must exercise reasonable care to protect a customer from

harm by dogs or other animals, but is, however, not liable for an injury by a dog not owned or kept by the storekeeper, where he did not know and had no reason to know that the dog would commit such an injury.

While undoubtedly a customer must exercise greater caution in conducting a dog among the aisles of a department store than on an open sidewalk, because of the fact that the attention of other customers will be diverted by the displays of merchandise, there is no law prohibiting bringing a dog into a store. This case is quite distinguishable from *Kenney* v. *Antonetti*, 211 Cal. 336 [295 P. 341], cited by appellant. There a motorist was injured at night by unseen horses which were negligently permitted to escape to the highway. A statute provided that if persons owning or controlling livestock negligently permitted them to stray onto a fenced public highway or remain unaccompanied thereon, they would be responsible for injury to another occasioned by want of ordinary care and skill in the management of such property. There the statutory standard was given weight in holding that a prima facie case was established simply by the happening of the accident.

Appellant has cited a New York case, *Steubing* v. *Hooper*, 72 N.Y.S.2d 276, in which a customer tripped over defendant storekeeper's dog which she had not seen. It was held that since the dog was in and out of the store and in the narrow aisles thereof on many occasions, the jury was justified in finding that the condition was a source of danger to customers which defendant might reasonably have anticipated.

It is our view that it was the duty of respondent Hink to exercise ordinary care for the safety of appellant.

It was for the jury to determine whether or not said respondent was guilty of negligence in permitting dogs to be brought into the store during business hours whether on a leash or not.

Appellant was a business invitee and it was the duty of respondent Hink to exercise reasonable care to maintain supervision and reasonably safe aisles for its customers. (See *Porter* v. *Thompson*, 74 Cal.App.2d 474 [169 P.2d 40], *Hodge* v. *Weinstock Lubin & Co.*, 109 Cal.App. 393 [293 P. 80]; *Barnett* v. *La Mesa Post, supra.*)

Our Supreme Court in *Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, at page 233 [282 P.2d 69], lays down the rule as follows: ''Generally, the owner of property '. . . is under a duty to keep in safe condition all portions of premises

over which he has control' (*Sexton* v. *Brooks*, 39 Cal.2d 153, 156 [245 P.2d 496]) and in more detail: 'A possessor of land who knows, or reasonably should know, of a natural or artificial condition upon his premises which, he should foresee, exposes his business visitors to an unreasonable risk, and who has no basis for believing that they will discover the condition or realize the risk involved therein, is under a duty to exercise ordinary care either to make the condition reasonably safe for their use or to give warning adequate to enable them to avoid the harm.' (*Crane* v. *Smith*, 23 Cal.2d 288, 296 [144 P.2d 356]; see also Prosser on Torts, p. 642 et seq.)''

In *Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213 [157 P.2d 372, 158 A.L.R. 872], the Supreme Court held (219):

'' 'If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.' (Rest. Torts, § 449.) It has been held that the rules on the subject in the Restatement of Torts, sections 442-453, are applicable in this state. (*Stasulat* v. *Pacific Gas & Elec. Co.*, 8 Cal.2d 631 [67 P.2d 678].)''

Here the hazard of another customer bringing a dog into the crowded aisles of a department store makes the defendant department store negligent particularly in view of the fact that the evidence shows that the dog had been brought into the store on previous occasions. The jury could have concluded that the department store had notice of the hazard.

In *Porter* v. *Thompson, supra,* plaintiff was an invitee of defendant at a cattle auction. A fractious cow jumped the fence of an enclosure and injured plaintiff who was sitting in one of defendant's bleachers. It was held to be a jury question as to whether the defendant exercised ordinary care for plaintiff's safety.

In *Hodge* v. *Weinstock Lubin & Co., supra,* it was held that it was the duty of defendant when it invited the public into its store, to exercise ordinary care and prudence to keep the aisles and passageways of the premises in and through which, by their location and arrangement, a customer in making purchases was induced to go, in a reasonably safe condition so as not unnecessarily to expose the customer to danger or accident.

We hold therefore that the nonsuit in favor of respondent Hink was improper for the foregoing reasons.

There remains the further question then, of whether the

respondent store's treatment of appellant while she lay on the floor for approximately a half hour awaiting the ambulance, contributed in any way to her injuries. In view of our holdings that the nonsuits are improper on other grounds we need not decide this question.

Judgments of nonsuit reversed.

Draper, J. pro tem.,* concurred.

NOURSE, P. J., Concurring and Dissenting.—I concur in the reversal as to respondent Potter.

I dissent to the reversal as to the respondent Hink and Son.

Respondents' petitions for a hearing by the Supreme Court were denied July 13, 1955. Schauer, J., was of the opinion that the petitions should be granted.

*Assigned by Chairman of Judicial Council.