[No. A059646. First Dist., Div. Five. Dec. 13, 1993.]

JOANNE DELFINO, Plaintiff and Appellant, v.
PATRICIA SLOAN et al., Defendants and Respondents.

[REDACTED]

## Counsel

Grant & Sternberg, Jeremiah Leahy, Lazzarini & Frazier and Robert W. Lazzarini for Plaintiff and Appellant.

York, Buresh & Kaplan, Fred M. Feller and Alan J. Jang for Defendants and Respondents.

## Opinion

PETERSON, P. J.—Appellant Joanne Delfino suffered serious injuries when she fell from her bicycle, after being chased and knocked down by a dog which was running loose on the public streets in Contra Costa County. She brought this lawsuit against the owners of the dog she testified had caused the accident. We will hold, inter alia, that a local ordinance, penalizing an owner whose dog is allowed to roam public streets unleashed, is an animal control law enacted to protect public health and safety and imposes strict criminal liability, regardless of the absence or presence of mens rea in the dog owner; and that violation of such a regulatory law, which requires a given level of conduct and imposes liability on those who, regardless of intent, do not comply, is negligence per se.

The trial court initially indicated it would instruct the jury on principles of negligence per se, as derived from the violation of a county ordinance forbidding dog owners to "allow" their dogs to wander loose on the public streets. Counsel accordingly discussed this theory in voir dire and opening argument. The trial court ultimately declined to instruct the jury on principles of negligence per se, after concluding the word "allow" in the ordinance reached only the conduct of those who willfully or intentionally took action which resulted in a dog wandering loose, and not the arguably inadvertent conduct of an owner whose dog wandered the streets without any proof of willfulness on the part of the owner.

The trial court's ruling was erroneous in this case, both as a matter of pure legal interpretation, and because there was substantial evidence of willfulness on the part of the alleged owners of the dog. We cannot conclude this

error, shifting the burden of proof as to negligence, was harmless. We, therefore, reverse and remand for a new trial.

## I. FACTS AND PROCEDURAL HISTORY

The following evidence presented at trial furnishes background to the legal issues presented in the appeal.

Appellant went out for one of her regular bike rides one afternoon. She put on her safety helmet, gloves, and other appropriate apparel for bike riding. As she left her home in Alamo, she put a letter in her mailbox. While mailing the letter, she saw in the street a playful dog which she had seen loose in her neighborhood previously. The dog "looked like a German Shep[h]erd."

As appellant proceeded on her bike ride, the dog followed her from place to place, running along with the bike; appellant heard the sound of a loose chain around its neck. Appellant changed course to avoid the dog, but the dog also changed course to follow her. Then the dog knocked its head into her bike, and appellant was thrown to the ground, striking her elbow, leg, and left hip.

Appellant could not get up and could not move. The police and an ambulance were summoned, and appellant went to the hospital in the ambulance. The dog continued to play around the crash site.

Appellant's injuries were both serious and painful. Her hip was broken, and her recovery was very slow and arduous. Surgery was performed to insert pins in her hip. Bedridden in a hospital for three days, she thereafter had to learn how to use a walker and crutches. After seven days, she left the hospital, but could not perform any household tasks such as cooking for herself, could not get out of bed or dress herself for weeks, and could not bathe herself for three months.

After a year of pain, medication, slow recovery, and physical therapy, appellant still had not fully recovered. Surgeons removed the pins placed in her hip, which were then causing inflammation of adjoining muscle tissue.

Appellant did not recover. Her thigh remained sore, swollen, and painful; her pain medication caused her to be lightheaded and nauseated. A third surgical procedure was required to remove necrotic bone from her hip.

Appellant testified she still had not recovered as of the time of trial, years after the accident. Her doctor indicated she needed surgery a fourth time to install an artificial hip.

Appellant brought this action against respondents to recover for her injuries. She alleged that respondents were the owners of a dog named Stix, which was the dog she believed had caused the accident; and that respondents had been negligent and had violated a local ordinance by allowing the dog to run loose.

The case proceeded to trial before a jury. Prior to trial, the court on its own motion questioned the applicability of the local ordinance forbidding dog owners to "allow" their dogs to run loose. After hearing argument, the trial court initially determined the ordinance applied, so appellant's counsel discussed the violation of the ordinance in jury selection and in his opening statement to the jury, as a predicate for liability on a theory of negligence per se from a violation of the ordinance.

Later, however, during the settlement of the jury instructions, the trial court reversed itself and ruled the local ordinance did not apply, because the trial court believed the ordinance's use of the word "allow" meant that an owner was not in violation merely because his dog was running loose in the street. In the trial court's view, the ordinance only applied if the owner intentionally, volitionally, or willfully caused the dog to run loose. Therefore, the trial court refused to instruct on the theory of negligence per se as derived from a violation of the ordinance.

The jury returned a defense verdict by a margin of nine to three. Appellant's motion for new trial was denied, and she timely appealed.

## II. DISCUSSION

We conclude we must reverse and remand for a new trial under proper instructions. The trial court's refusal to instruct on principles of negligence per se was erroneous, and the resulting jury verdict was a miscarriage of justice.

We are concerned here with the terms of Contra Costa County Ordinance No. 80-97, article 416-4.402, which provided in relevant part: "Animals At Large. (a) No person owning, possessing, harboring, or controlling any animal shall *allow* such animal to be at large. [¶] (b) As used in this section 'at large' means an animal which . . . : [¶] (1) In the case of dogs, is not under effective restraint by a leash; . . . [¶] provided, nevertheless, that a dog is not required to be under restraint by a leash when the dog has not strayed from and is upon private property owned by, or in the possession of, the person owning or controlling the dog." (Italics added.)

Appellant pleaded the terms of the ordinance and its alleged violation by respondents in her complaint; she sought an instruction on the principles of

negligence per se derived from this ordinance. Her proposed instruction, based upon the wording of Evidence Code section 669 and BAJI No. 3.45, stated: "If you find that a party to this action violated Contra Costa County Ordinance Article 416-4.402 just read to you and that such violation was [the] cause of injury to another, you will find that such violation was negligence unless such a party proves by a preponderance of the evidence that she did what might reasonably be expected of a person of ordinary prudence acting under such circumstances, who desired to comply with the law. In order to sustain such a burden of proof, such party must prove by a preponderance of the evidence that he or she was faced with circumstances which prevented compliance or justified non-compliance with the ordinance."

Such an instruction was proper here. A long line of cases supports the giving of a similar instruction on negligence per se, derived from similar local ordinances designed to forbid animal owners from allowing their quadrupeds to roam the streets without effective restraint or supervision.

In the early case of *Siemers* v. *Eisen* (1880) 54 Cal. 418, 420-421, Chief Justice Morrison established this principle, which has consistently been observed ever after in California law. In *Siemers*, a runaway horse had been left hitched to an unsecured buggy near the corner of Ninth and Minna Streets in San Francisco; the horse and buggy ran down the plaintiff and injured him severely. (P. 419.) The defendant horse owner had violated a San Francisco ordinance which forbade animal owners to leave their animals roaming at large, and specifically provided that " 'no person having or using any animal attached to a dray, truck, cart, or water-cart, shall leave such animal without first securely locking the wheels of the vehicle to which it shall be attached.' " (*Id.* at p. 420.)

"This ordinance was intended to subserve a good purpose, and doubtless would do so if strictly enforced. The practice of leaving animals . . . unfastened upon our public streets, and thus placing in jeopardy the lives of men, women, and children, should not be tolerated. *It is in fact, condemned by the law, and when damages result therefrom, the owner of such animal should be held to a strict legal accountability.*" (*Siemers* v. *Eisen, supra,* 54 Cal. at p. 420, italics added.) The Supreme Court also quoted and adopted the view stated in a treatise on negligence: " 'The failure of any person to perform a duty imposed upon him by a statute or other legal authority should always be considered evidence of negligence, *or something worse.* . . . [A]nd when no evil intent appears, the omission may properly be regarded as simple negligence.' " (*Ibid.,* italics in original.)

Seventy years later, this same principle was applied by the Second District to a Los Angeles dog control ordinance, in circumstances similar to those of

the present case. (*Brotemarkle* v. *Snyder* (1950) 99 Cal.App.2d 388, 389-390 [221 P.2d 992].) The plaintiff had been riding a scooter when a dog, left unleashed and unattended in violation of a local ordinance, collided with him. The plaintiff was knocked to the ground and suffered serious injuries. Relying, inter alia, on *Siemers* v. *Eisen, supra*, 54 Cal. 418, the Second District held a violation of the statute constituted negligence per se: "The ordinance forbids the owner to *allow* his dog to be at large, except upon a leash. In our great, metropolitan areas, it is no longer possible to enjoy many things which were part and parcel of human life in earlier times, and still are in suburban and rural communities. Whatever may be said about the affection which mankind has for a faithful companion, modern city conditions no longer permit dogs to run at large." (*Brotemarkle* v. *Snyder, supra*, 99 Cal.App.2d at p. 390, italics added.)

Two years later, Division Two of this district, in *Rollins* v. *Hedin* (1952) 114 Cal.App.2d 488, 489-490 [250 P.2d 728], interpreted a leash ordinance of the City of San Bruno, which forbade dog owners to "allow" their dogs to run at large. The plaintiff proved that while walking down the sidewalk he was toppled by an unleashed dog, and that the owner knew the dog had previously run loose, although the dog had never hurt anyone before. (*Ibid.*) "A 'leash ordinance' such as here involved is designed for the protection of the public from dogs running at large and where its violation proximately causes injury to a plaintiff he may recover therefor against the owner." (*Id.* at p. 490, citing *Brotemarkle* v. *Snyder, supra*, 99 Cal.App.2d 388.)

One year later, the Third District authoritatively construed the word "allow" as used in a leash ordinance, in the context of a criminal proceeding where the defendant was charged with allowing his dog to roam, killing a neighboring sheep. (*Markus* v. *Justice's Court* (1953) 117 Cal.App.2d 391, 398 [255 P.2d 883].) "The essence of the charge was not the killing of the sheep but the allowing the dog to run, that is, to roam, off the property where kept. This is sufficiently stated by the statement that the dog was allowed to run on the property of other than the defendant. . . . The use in the pleadings of the word 'allow' implies the charge that defendant was sufficiently in control, ownership or possession of the dog as to be chargeable with regulation of his conduct in accordance with the ordinance. The word is synonymous with 'permit' (Webster's Int. Dict.), and both words *when used in conjunction with a statute charging a duty to the owner of a dog to regulate his activities connote positive duty, failure to perform which will violate the ordinance.*" (*Ibid.*, italics added; see also *Garson* v. *Juarique* (1979) 99 Cal.App.3d 769, 771-772 [160 Cal.Rptr. 461] [A similar ordinance was violated, resulting in a presumption of negligence, where an unleashed dog bolted from beside its master, despite its prior peaceful nature and obedience training.].)

■ These cases indicate that an ordinance forbidding owners to "allow" their unleashed dogs to be on public property imposes a "positive duty" to prevent unleashed dogs from being present. The ordinance is violated even where there is no proof the owner intentionally or willfully caused the dog to roam loose. Its requirement that a dog must be kept on its owner's property or on a leash is violated by any owner of a dog not so confined. A contrary interpretation would clearly preclude enforcement of the ordinance. The dog cannot testify as to whether its master specifically intended for it to roam unleashed, and the owner generally could not be required to testify in a criminal proceeding.

■ Respondents, implicitly conceding the existence of no contrary case law, simply rely upon their interpretation of the general language contained within Penal Code section 20 (section 20). That section, enacted in 1872, restates the common law as it then existed, and provides: "To CONSTITUTE CRIME THERE MUST BE UNITY OF ACT AND INTENT. In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." Respondents rely upon section 20 for their attempt to justify the trial court's ruling regarding the local ordinance's use of the word "allow." Respondents' reliance upon section 20 is misplaced.

The California rule has long been that certain statutes or ordinances designed to protect the public health and safety may impose a positive duty, and strict criminal liability for failure to perform that duty, as a substitute for the mens rea of the common law. "Under many statutes enacted for the protection of the public health and safety, e.g., traffic and food and drug regulations [or animal control laws], criminal sanctions are relied upon even if there is no wrongful intent. These offenses usually involve light penalties and no moral obloquy or damage to reputation. Although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction. The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the interest of enforcement. [Citations.]" (*People* v. *Vogel* (1956) 46 Cal.2d 798, 801, fn. 2 [299 P.2d 850]; accord, *People* v. *Wells* (1968) 261 Cal.App.2d 468, 478 [68 Cal.Rptr. 400] ["Although criminal statutes are not often construed to impose sanctions in the absence of *mens rea* or guilty intent, an exception occurs where the statute is an expression of a legislative policy to be served by strict liability."]; accord, *People* v. *Martin* (1989) 211 Cal.App.3d 699, 713 [259 Cal.Rptr. 770, 86 A.L.R.4th 383]; *People* v. *Telfer* (1991) 233 Cal.App.3d 1194, 1203 [284 Cal.Rptr. 913].)

Thus, the case law uniformly holds that the common law requirement of a union of act and wrongful intent, as restated in section 20, is limited to those

true crimes which existed at common law; the section does not apply to regulatory offenses or infractions subsequently created by statute in order to safeguard the public health and safety. (See *People* v. *Vogel, supra,* 46 Cal.2d at p. 801, fn. 2.) In such matters as the regulation of weights and measures, the abatement of local nuisances, the branding of food or other products, the promulgation of traffic laws, and the regulation of agriculture and keeping of animals, the law typically regulates by requiring a given level of conduct—and imposes liability upon those who (regardless of intent) do not comply. (*Ibid.*)[1]

No California case has ever endorsed respondents' argument by holding that section 20 forbids enforcement of a local leash ordinance which is based upon strict liability principles, as is the one here. Those cases dealing with such ordinances, discussed *ante,* would necessarily reject the argument in the case at bench.

█    Respondents recognize their argument regarding a need for willfulness is also undermined by Civil Code section 3342, the California "Dog Bite" Act, which provides in relevant part that "The owner of any dog is liable for the damages suffered by any person who is bitten by the dog while in a public place . . . regardless of the former viciousness of the dog or the owner's knowledge of such viciousness." (Subd. (a).) This statute specifically establishes a dog owner's liability for the injuries inflicted by the owner's dog, without a showing of willfulness under section 20. (See *People* v. *Berry* (1991) 1 Cal.App.4th 778, 787 [2 Cal.Rptr.2d 416] ["Civil Code section 3342 creates a remedy. It allows one to recover damages caused by a dog bite without having to show fault, i.e., under strict liability."].)

Respondents attempt to distinguish this case on the grounds that their dog did not bite appellant directly, and caused her injuries only by attacking the wheel of her bicycle. This is a distinction without a difference, for the case law in fact upholds liability under general principles of proximate cause, quite apart from the provisions of Civil Code section 3342, even without a direct bite to the victim. (See *Frederickson* v. *Kepner* (1947) 82 Cal.App.2d

---

[1]Cases correctly limiting the application of section 20 in this way were analyzed by Division Two of this district in *People* v. *Chevron Chemical Co.* (1983) 143 Cal.App.3d 50, 52-54 [191 Cal.Rptr. 537]; that case rejected a similar challenge, based on section 20, to a criminal prosecution for a strict liability offense. *Chevron Chemical* traced back to 19th-century English cases (which, thus, predated section 20 itself) the principle that criminal intent need not be proven in prosecutions for public welfare offenses, citing the Victorian case of *Regina* v. *Stephens* (1866) L.R. 1 Q.B. 702, 704, which had observed "it is manifest that there are a large class of cases in which it is unnecessary to prove a criminal intention . . . ." (Accord, *People* v. *Travers* (1975) 52 Cal.App.3d 111, 114-115 [124 Cal.Rptr. 728] (Per Molinari, P. J.); *People* v. *Matthews* (1992) 7 Cal.App.4th 1052, 1057-1058 [9 Cal.Rptr.2d 348].)

905, 908 [187 Cal.Rptr. 800] [Liability was upheld even though the defendant's dogs did not bite the victim and merely knocked him down.]; *Hicks* v. *Sullivan* (1932) 122 Cal.App. 635, 638-640 [10 P.2d 516] [Liability was upheld where the dog was unable to bite the victim because it was wearing a muzzle when it knocked her down.].) In short, the absence of a direct bite by a dog to a person, even if arguably precluding liability under Civil Code section 3342, does not, ipso facto, preclude liability predicated, as here, upon general principles of proximate cause arising from a violation of a local leash ordinance.

█ In sum, the case law establishes that a dog owner is in violation of a local ordinance such as the one in issue here when the dog is "allowed" to exist on public property without a leash, by failure of the owner to take the necessary action to prevent such an occurrence. The owner may be liable for the acts of such an unsecured dog, even if it is not proven that the owner acted willfully and with mens rea. The trial court, therefore, should have instructed the jury on principles of negligence per se, as derived from the ordinance in issue here—even if there were no evidence of willfulness.

Further, such an instruction should have been given, assuming arguendo the trial court's interpretation of the ordinance's limited application was accurate. There was substantial evidence respondents knew their dog Stix was regularly and continually wandering off their property unleashed, both before and after the accident in question here. The jury could readily have concluded such conduct was volitional. Respondents had an escape-proof dog run to confine the dog, but apparently did not always use it. The jury could have concluded that, in so doing, respondents willfully acted at their peril. An instruction of negligence per se was, therefore, required in any event. (See Evid. Code, § 669 ["(a) The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity . . . ."].)

Respondents next suggest that the failure to so instruct the jury was harmless error, but this argument is unpersuasive. Appellant was entitled to an instruction on negligence per se which would have shifted the burden of proof to respondents, to rebut the presumption of negligence. Such an error affecting the burden of proof is generally prejudicial. (See, e.g., *Peterson* v. *City of Long Beach* (1979) 24 Cal.3d 238, 244-247 [155 Cal.Rptr. 360, 594 P.2d 477] [A judgment was reversed where the trial court did not properly apply the presumption of negligence from violation of a local police regulation.]; *Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 435 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1] [A judgment was reversed where the jury was not properly instructed on the shifting of the burden of

proof.]; accord, *Moreno* v. *Fey Manufacturing Corp.* (1983) 149 Cal.App.3d 23, 27-28 [196 Cal.Rptr. 487].)

Although respondents suggest the jurors might have reached the same result in any event, because they could have concluded respondents' dog Stix was not the dog which caused the accident, this is very far from certain. There was, minimally, substantial evidence identifying the dog causing appellant's injuries as respondents' dog. Appellant so testified; in addition, much circumstantial evidence produced by appellant pointed to this conclusion. As an example, respondents admitted their dog Stix had a habit of getting out of their fenced yard, unless he was confined to the escape-proof dog run they had built in an apparent effort to thwart escapes; and there was evidence that Stix was not so confined on the accident day.

The fact that conflicting defense evidence was presented as to the identity of the dog causing appellant's injuries clearly does not render the court's instructional error harmless, as respondents urge. Resolving such evidentiary conflicts was the exclusive province of the jury; and appellant was entitled to have her theory of negligence per se, supported by her own testimony and reasonable inferences from other evidence, considered by that jury under proper instruction.

The jury's communication with the judge immediately prior to the verdict arguably indicated that some jurors may have felt appellant had not carried her burden of showing negligence on respondents' part, while others may have felt respondents' dog was not the dog which caused the accident. However, the jury verdict need not be unanimous; and the jury's decision here, by a margin of nine to three, reinforces our conclusion the error in refusing appellant's negligence per se instruction was prejudicial.[2]

Finally, we reject respondents' oblique suggestion that appellant may have waived the error by withdrawing her request for instruction on negligence per se, or may have stipulated to the instructions as given. The record before us clearly indicates appellant very much desired instruction on negligence

---

[2]In *Robinson* v. *Cable* (1961) 55 Cal.2d 425, 428 [11 Cal.Rptr. 377, 359 P.2d 929], our Supreme Court addressed an analogous problem, and found prejudicial error, when a jury instruction wrongly placed a burden on the plaintiffs which should have been on the defendants, the evidence was in sharp conflict, and the jury reached a defense verdict by a nine-to-three vote, as here. *Robinson* held it was inappropriate to speculate, as respondents urge in this case, as to the basis of the verdict of the majority of the jurors who voted for the defense; the proper remedy was reversal and retrial. (55 Cal.2d at pp. 428-429.) The same is true here. (Accord, *Drake* v. *Dean* (1993) 15 Cal.App.4th 915, 919-920, 931-932 [19 Cal.Rptr.2d 325], review den. [A defense verdict was reversed for error involving failure to properly instruct on negligence, where a dog named Bandit knocked the plaintiff down and broke her hip.].)

per se, requested instruction on this issue, objected strongly to the trial court's ruling, and was prejudiced by the last minute withdrawal of this issue from the jury instructions after the case had been tried on the assumption that the trial court would adhere to its prior ruling and instruct on such principles.

We conclude the instructional error was prejudicial and resulted in a miscarriage of justice. As we are reversing the judgment, we need not reach appellant's other contentions regarding the alleged misconduct of the jurors, misconduct by defense counsel, and related issues.[3]

III.   DISPOSITION

The judgment is reversed, and the matter is remanded for a new trial in accordance with the views expressed in this opinion.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied January 11, 1994, and respondents' petition for review by the Supreme Court was denied March 17, 1994.

---

[3]In brief, the record shows one juror slept through portions of the trial, despite efforts of the trial court and counsel to rouse her. Defense counsel also disregarded the pretrial ruling of the trial court, and sought to imply the existence of collateral sources of benefits in cross-examination. While we find these contentions troubling, we need not decide whether they would result in reversal in the absence of the instructional error. Taken in the context of the failure to properly instruct the jury, however, these lapses tend to support appellant's argument for a new trial—the remedy we are granting here by reversing the judgment. (See *Robinson v. Cable, supra,* 55 Cal.2d at pp. 428-429.)