JOHN DOMM, Appellee, *vs.* GEORGE HOLLENBECK,
Appellant.

*Opinion filed June 18, 1913—Rehearing denied October 8, 1913.*

1. ANIMALS—*owner's knowledge of vicious propensity of dog must be proved.* The natural presumption from the habits of dogs is that they are tame, docile and harmless, both as to persons and property, and in order to render the owner of a dog liable for damages resulting from the vicious or mischievous acts of the animal it must be proved that the owner had knowledge of the vicious or mischievous propensities.

2. SAME—*what is not sufficient to charge owner of a dog with knowledge.* To charge the owner of a dog with knowledge of the vicious or mischievous propensities of the animal it is sufficient if the proof shows that he knew that the dog would be likely to inflict an injury similar to the one complained of; but the fact that he might have known of the vicious or mischievous propensities had he exercised reasonable care is not sufficient to charge him.

3. SAME—*owner of animal is bound to take notice of general propensities of the class to which it belongs.* The owner of an animal is bound to take notice of the general propensities of the class to which it belongs, but he is under no obligation to guard against injuries which he has no reason to expect on account of some disposition of the particular animal different from the general class, unless he has notice of such disposition or the injury is attributable to some other neglect on his part.

4. SAME—*admissibility of evidence of peaceable disposition of dog.* If conclusive proof is made of the vicious propensity of a dog to attack and bite mankind, and it is shown that the owner had knowledge of such propensity, then proof that the dog had acted peaceably at other times would be incompetent; but where the evidence tending to show vicious acts by the dog is contradicted and it is not shown the owner knew of such acts, then proof of the previous quiet and peaceable disposition of the dog is admissible on the question of notice.

5. SAME—*what does not obviate error in excluding evidence of peaceable disposition of dog.* The fact that the owner of a dog is allowed to testify that the animal was quiet and peaceable does not obviate the error of the court in refusing to allow his witnesses, who were disinterested persons, to give their testimony, offered for the purpose of showing that the dog had uniformly been of a quiet and peaceable disposition.

6. SAME—*what evidence not competent to show scienter.* To show knowledge by the owner of a dog of the vicious disposition of the animal, it is not competent to show the knowledge acquired by virtue of the particular attack upon which the action against the owner for damages is based.

· 7. ATTORNEYS AT LAW—*attorneys are not incompetent to testify.* Attorneys are not incompetent to take the stand as witnesses in the case they are trying, but their relation to the case is a matter which affects their credibility.

COOKE, C. J., and FARMER, J., dissenting.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. R. M. SKINNER, Judge, presiding.

JAMES J. CONWAY, and CLYDE H. THOMPSON, for appellant.

LEE O'NEIL BROWNE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

In September, 1905, John Domm, the appellee, was bitten by a dog owned by George Hollenbeck, the appellant, in a saloon in Seneca, and brought this suit in the circuit court of LaSalle county to recover damages on account of his injuries. There was a judgment for $750 damages and costs, based on the verdict of a jury, and the Appellate Court for the Second District having affirmed the judgment, granted a certificate of importance and an appeal.

The suit was begun to the March term, 1906, and at the March term, 1910, on the day the trial was commenced, the defendant moved the court for leave to withdraw his plea of the general issue and file a general demurrer to the declaration. The court denied the motion, and the first assignment of error is that the court erred in that ruling.

There had been a trial at the January term, 1908, and a judgment, which had been reversed by the Appellate Court, and the case had been re-docketed in the circuit court at the October term, 1909. Under the circumstances the granting or refusing permission was within the discretion of the court, which would not be interfered with unless there was an abuse of the discretion, and in our judgment it was properly exercised.

The dog was temporarily in Seneca for a few days at the time he attacked the plaintiff. The defendant lived at Dwight, in Livingston county, and drove, with his wife, in a single buggy from that place to Seneca and took with him the dog, which he had owned about eight weeks. At Seneca he put his horse in the barn of Patrick Judge and tied the dog in the barn with a chain fastened to a ring in a fancy, ornamental harness, with brass buttons or tags, worn by the dog. The next morning, at the suggestion of William Morrissey, one of two brothers who kept a butcher shop, the defendant took the dog to the shop and tied him to a bench which was used for cutting up meat. He was a bull dog, weighing sixty or seventy pounds, and was in the shop a part of two days and one night, and people came in and out of the shop and passed through in his vicinity. The attack on the plaintiff occurred late in the forenoon, and in the morning of that day Archie Marshall was driving a grocery delivery wagon and John McGettrick was with him. They noticed the dog with a shiny harness on, and McGettrick whistled for the dog and the dog jumped into the wagon. Marshall and McGettrick drove to a race track and from there went to an interurban camp to deliver goods. When they came back to town McGettrick got out of the wagon and went to the saloon and took the dog with him. The plaintiff was in the saloon, shooting the balls around on a pool table. He testified that he said nothing to the dog and paid no attention to him, when the dog attacked him, biting his finger; that he jumped on the table and the

dog attempted to get on the table; that he jumped off the other side and the dog pursued him and bit him on the leg and left arm. There were other witnesses for plaintiff who saw the attack by the dog and testified to the general excitement in the saloon but did not know whether there was any provocation or not. McGettrick testified that the dog went back under the pool table and the plaintiff gave him a push or kick and at the same time pulled his cue back to shoot the balls, when the dog growled and jumped at his hand; that plaintiff jumped on the pool table and the dog had his feet on the top of the pool table; that plaintiff dropped his cue and started for the back end of the bar, and while he was running around the bar the dog grabbed his leg.

The owner of an animal is bound to take notice of the general propensities of the class to which it belongs, but he is under no obligation to guard against injuries which he has no reason to expect on account of some disposition of the individual animal different from the species generally, unless he has notice of such disposition. The owner or keeper of a domestic animal of a species not inclined to mischief, such as dogs, horses and oxen, is not liable for any injury committed by it to the person of another, unless it be shown that the animal had a mischievous propensity to commit such an injury and the owner had notice of it or that the injury was attributable to some other neglect on his part. If the owner of a vicious animal knows its character and disposition to commit injury to mankind he is liable for all injuries it may inflict. (*Stumps* v. *Kelley*, 22 Ill. 140; *Mareau* v. *Vanatta*, 88 id. 132; *Keightlinger* v. *Egan*, 65 id. 235.) The natural presumption from the habits of dogs is that they are tame, docile and harmless, both as to persons and property, and the owner of a dog is not liable for damages resulting from the vicious or mischievous acts of the animal unless he had knowledge of his mischievous or vicious propensities; and such knowledge must be proved. (1 Thompson on Negligence, sec. 881.)

259 — 25

The proof may be made by evidence of facts and circumstances from which an inference of knowledge arises, and it is not necessary that the owner or keeper knew that the dog had committed the same injury. It is sufficient if he knows that it will be likely to commit an injury similar to the one complained of, but it is not enough to charge him that he might have known of the vicious or mischievous propensities of the dog by the exercise of reasonable care. (1 Thompson on Negligence, sec. 842.)

The first fact which the plaintiff was required to prove to maintain his action was that the defendant's dog was vicious and had a disposition to commit injury to mankind. The evidence tending to show a vicious disposition of the dog consisted of the testimony of two witnesses. One of them was George Couch, who testified that he saw the dog in the saloon with the defendant either the first or second day the dog was in Seneca; that the defendant was talking with the saloon-keeper and the witness was at the pool table punching the balls around; that the dog showed his teeth at him and moved a couple of feet toward him; that he did not know whether the dog was going to bite or not, and said, "He will bite somebody yet," but did not know whether defendant heard him, and that he turned around and went back to another table. The defendant testified that he never had the dog in the saloon and never was there when Couch was there; that he did not see Couch in the saloon or any other place and that he never saw the dog show his teeth or make a move toward Couch. The saloon-keeper also testified that he never heard Couch tell the defendant that his dog would bite somebody; that he never saw Couch in the saloon when the defendant was there; that he never saw the dog show his teeth at Couch or growl at him, and that he did not remember any occasion when the witness and Couch and the defendant were in the saloon. The other witness called to show a vicious disposition was Patrick Judge, who owned the barn where the

defendant put his horse and dog when he came to Seneca. The witness said he got some water in a pan and gave it to the dog; that his wife and daughter were present and he went up and petted the dog, and that the dog made no attempt to attack or bite and did not growl or snarl at him. He next saw the dog in the butcher shop early in the morning a day or two afterward, and he said the dog was up on the window sill or ledge looking through the window, and put his paws on the glass and jumped up against the glass in a manner which made the witness apprehensive that the dog might get out and bite him. The dog was confined in the butcher shop, and, according to the witness, made some sort of a demonstration at an early hour in the morning, which was not explained as characteristic of a watch dog protecting property, or an attempt to get out of confinement or to make an unprovoked attack on a passerby.

The defendant sought to meet the evidence of these two witnesses by showing that the dog was not vicious and that it never manifested any dangerous propensities. For that purpose Archie Marshall, who had the dog with him in the delivery wagon most of the forenoon the day of the trouble, was asked whether the dog manifested any vicious tendencies or habits. An objection was sustained, and the defendant offered to prove that from the time the dog got into the delivery wagon he was quiet and peaceable and that both Marshall and McGettrick petted him and he acted in a quiet and inoffensive manner. The evidence was excluded. McGettrick was called and the defendant offered to make the same proof by him, and that both he and Marshall and other persons handled and petted the dog. McGettrick was not allowed to answer. The defendant also offered to prove by William Morrissey that while the dog was in the meat market children played with him, rode on his back, wrestled with him and threw him down on the sawdust; that defendant's wife threw him on the floor, took hold of his jaws with both hands and separated them, and that

he was quiet, inoffensive and harmless. The evidence was excluded, and the defendant attempted to make the same proof by John Morrissey but was not permitted to do so. A number of witnesses from Dwight, where the dog had been kept and owned for a considerable time, one of whom had owned the dog for ten months and sold him in the spring of 1905, were produced and an attempt was made to prove by them the uniform good behavior and good nature of the dog; that children rode on his back and wrestled with him on the streets; that at the Keeley Liquor Cure he was generally known as the "jag dog," for the reason that he followed patients and was a source of amusement to them; that the witnesses had petted the dog and had seen little children riding on his back; that he never showed a vicious disposition, never had a fight with another dog or showed any tendency or disposition to be cross toward either man or beast. The defendant offered to testify that he kept the dog at home as a house dog; that a little girl in the family rode on his back and that other children played with him and rode on his back at his home and on the streets; that he was a quiet and inoffensive animal, not used or accustomed to attack or bite mankind or other animals and never manifested a bad disposition. The court sustained objections to all such evidence, which amounted to holding that while the plaintiff could prove two instances tending to show a vicious propensity, the defendant could not meet or overcome such evidence by showing that the dog had no such propensity.

In defense of these rulings counsel present two propositions. The first is, that the defendant had no right to make the proof because the plaintiff had proved a vicious disposition on two occasions, and evidence that the dog had acted peaceably at all other times would be incompetent to disprove the specific acts, and they rely upon the decision in *Buckley v. Leonard,* 4 Denio, 500, to maintain that proposition. Of course, if conclusive proof were made of the

propensity of a dog to attack and bite mankind and knowledge of such propensity on the part of the owner, it would be incompetent to show that at some other time the dog was quiet and did not manifest a bad disposition,—and that was the ground of the decision relied upon. That was not the case here, and the offered evidence was competent and material on both of the issues in the case. If Judge correctly interpreted the intention of the dog when he saw him in the early morning hour there was no evidence that the defendant had any notice of the fact, from which he would have reason to expect that the dog would attack and bite some one. If the jury believed Couch as to the alleged occurrence in the saloon, he did not know that the defendant saw it or heard his remark. Couch was contradicted, and there was no evidence by him or any other witness that the defendant knew of either of the two alleged instances of vicious conduct in Seneca. He had a right to prove, on the question of notice, the previous uniform good behavior of the dog and his peaceable and quiet disposition. The evidence was also competent on the question whether Judge was justified in believing that the dog was trying to get out and attack him and whether the testimony of Couch was truthful. A baggageman at the freight house testified that after the trouble, when the defendant was going home with the dog, the dog did not look very good to him and looked at him rather strongly. That testimony had no weight, and being after the attack on the plaintiff did not tend to prove notice. There is no rule as to the number of instances of a mischievous disposition shown by a dog to constitute notice, and if it were proved and not denied that a dog had attacked some person or manifested a disposition to do so it might be sufficient, and evidence that he acted peaceably at some other time would not tend to disprove the specific act, but the offers in this case were to prove the uniform good disposition of the dog and his freedom from any disposition to bite or attack mankind, or any vicious propensity.

The second proposition of counsel is, that the defendant was not injured by excluding the evidence because he testified that the dog was quiet and peaceable. The defendant was limited, as above stated, in testifying to the character of the dog and his knowledge of it, but if he had not been so limited it is not the rule that if a party testifies to a fact he is not entitled to any more evidence. Moreover, the interest of the defendant in the result of the suit affected his credibility while other witnesses offered were entirely disinterested, and if the evidence had been admitted the jury might reasonably have concluded that the dog was not vicious but was of a quiet and peaceable disposition. The court erred in excluding the evidence.

If the vicious disposition of the dog were established the second necessary fact to be proved was that the defendant had notice of it. On that subject the two attorneys for the plaintiff testified that in a conversation in their office before the first trial, the defendant, in reply to a question as to his object in keeping the dog tied, said it was so he could not get out and hurt or bite anybody. The first judgment in this case was reversed because the trial court excluded the testimony of these attorneys, being of the opinion that they were incompetent witnesses from their relation to the case. That was error, since attorneys are competent to testify, but their relation to the suit affects their credibility. (*Bishop* v. *Hilliard,* 227 Ill. 382; *Glanz* v. *Ziabek,* 233 id. 22.) The defendant testified that he was in the office to learn whether the case would be tried at the time it was set for; that there was a suggestion from one of the attorneys of a settlement and an amount was named, and that no such conversation occurred as was testified to by the attorneys. He testified that, as a matter of fact, he tied the dog up because he was afraid that he might be stolen or run away from the strange place. Edward Reebe, who at the time of the first trial was trying to sell the defendant a monument for his father and mother and who

assisted him in looking up witnesses, stayed with the defendant as a guest, and on this trial he testified that he saw a skin or robe on the floor and defendant said it was the hide of a bull dog that hung himself, and he was glad the dog was dead, for he was afraid he would bite him. The dog was accidentally hung by a rod which caught in his collar. The defendant denied that he had any such conversation, and the evidence was incompetent, as it related to knowledge acquired by the attack on the plaintiff.

The errors committed by the court were serious and prejudicial, and in view of the testimony introduced and offered it is plain that the judgment cannot be sustained.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*

COOKE, C. J., and FARMER, J., dissenting.