### Arthur J. ALLEN, Plaintiff,
### v.
### GREEN ACRES FARM, INC., an Illinois Corporation, and Margaret Roll, Defendants.

### No. 73 C 2231.

United States District Court,
N. D. Illinois, E. D.

June 3, 1975.

Melvin S. Cahan and Laurence H. Kallen and Lurie, Orth, Cahan & Kallen, Chicago, Ill., for plaintiff.

Milton J. Pfetzer, Epton & Druth, Ltd., Chicago, Ill., for defendants.

### MEMORANDUM AND JUDGMENT ORDER

PERRY, Senior District Judge.

This cause comes on to be heard after a trial before a jury and a verdict by the jury finding Margaret Roll not guilty and finding Green Acres Farm, Inc. guilty and assessing plaintiff Arthur J. Allen's damages at $40,000.00.

At the end of the plaintiff's case both defendants moved that the Court direct

---

a verdict for each of them. The Court took the motion of the defendants under advisement and reserved ruling. At the conclusion of all of the evidence both defendants again moved the Court to direct a verdict for each of them. Again the Court took the motions of each of the defendants under advisement, reserved ruling, directed the counsel for both parties to make final argument, instructed the jury and directed the jury to return a verdict.

Both at the conclusion of the plaintiff's case and at the end of all of the evidence the Court was of the opinion that the motions for a directed verdict should be granted for the reasons hereinafter set out in this memorandum and judgment order. Only out of an abundance of caution did the Court permit the case to go to the jury. It is a policy of this Court, in order to avoid possible double appeal expenses, to obtain a jury's verdict in practically all cases. Then, if this Court errs in granting a motion for judgment notwithstanding the verdict, the Court of Appeals is in a position to order termination of the litigation without the need for a long and expensive retrial.

After the jury returned its verdict as aforesaid, the defendants moved the Court for a judgment notwithstanding the verdict under Rule 50(b), for a motion to amend the judgment under Rule 59 and for a motion for a new trial under Rule 59(a). Thereafter an amendment thereto was filed. The plaintiff responded. The parties filed memoranda. The Court has now read and considered all of the foregoing documents and has reviewed the notes concerning the evidence taken by the Court and has fully refreshed his memory of the evidence. In addition, the facts brought out on the trial were so unusual that they remain indelibly fixed in the Court's mind. The Court is now therefore, fully advised in all of the premises and finds and orders as follows:

In paragraph two of plaintiff's First Amended Complaint he charges that at all times he was in the exercise of ordinary care for his own safety. In plaintiff's testimony he told of more than twenty years of experience as a horse rider. He also admitted that he had a chronic disability in his left knee, known as a "football knee," from an injury received years before while playing football. Yet the evidence is clear that he held a tight rein upon the horse he was riding on this occasion which caused the horse to rise up, bow his head toward his body and raise his front feet. All of the evidence indicated clearly that the horse did not throw the plaintiff, but that plaintiff slid off the rear of the horse while holding the reins and that the horse fell backwards over plaintiff's left leg with the result that plaintiff's left femur was broken. Plaintiff well knew the condition of his left knee and that fact was unknown to either of the defendants. Under the circumstances, taking plaintiff's own version of the occurrence, he did not exercise ordinary care for his own safety. Furthermore, the plaintiff was completely impeached in other testimony as will more fully appear hereinafter.

In paragraph four of plaintiff's First Amended Complaint, plaintiff charges that he went to the property of defendant, Green Acres Farm, Inc., to participate in a trail ride being guided by defendant, Margaret Roll, as agent and employee of defendant Green Acres Farm, Inc. and that having paid the defendant Green Acres Farm, Inc. a fee that defendant owed him a duty to provide a reasonably safe guided trail ride and to be reasonably prudent in inspecting for potentially dangerous or dangerous circumstances and conditions.

In paragraph five of his First Amended Complaint plaintiff charged the defendant Margaret Roll, individually, and Green Acres Farm, Inc., through its agents and employees, were guilty of one or more wrongful, careless acts and omissions as enumerated in subparagraphs 5(a) to 5(m) inclusive.

The plaintiff charges in paragraph six of his First Amended Complaint that as a proximate result of the foregoing the plaintiff was thrown to the ground with defendant's horse upon him and that he suffered injuries and damages which he enumerates and claims $250,000.00 for his injuries and greatly decreased earning capacity.

The defendants denied all of the material allegations hereinabove recited.

The Court reserved ruling upon the motion for a new trial and now considers together the motions for directed verdicts by the defendants at the end of plaintiff's case, at the end of all of the evidence, and their motion for amending the judgment, and for judgment notwithstanding the verdict.

The Court will now consider all of the motions of defendant Green Acres Farm, Inc., except its motion for a new trial which has heretofore been and is still reserved for ruling in the future. The Court at this time will not consider said motion or any of the supporting or opposing arguments, more particularly the charges by defendant Green Acres Farm, Inc., concerning instructions given or refused or evidence or objection to the testimony of expert witness William Gatoff Jr., that was admitted, unless or until such time, if it should occur, that this Court's order of this date is reviewed and reversed without the cause being remanded for a new trial. If that should occur the Court will then consider the motion for a new trial and all of the foregoing reasons advanced by defendants.

The Court now considers the evidence concerning the charges in paragraph five from (a) to (m) inclusive, hereinabove mentioned.

Plaintiff charges in subparagraph 5(a) of his First Amended Complaint that the defendants provided him with a very difficult saddle horse to ride when they knew, or should have known, that he had not ridden at the stable before, and knew nothing of the temperament of the horse they provided. The evidence showed that plaintiff was a horse rider with over twenty years experience and that plaintiff was provided with a gentle horse, properly saddled and bridled and that the same horse was ridden later that day by defendant Margaret Roll, and thereafter by children without incident.

Plaintiff charges in subparagraph 5(b) of his First Amended Complaint that the defendants failed to make reasonable inquiry or investigation of plaintiff's equestrian skills before providing him with a horse known to be difficult, rank and dangerous. The evidence showed plaintiff's twenty years experience in riding horses and that the horse provided for plaintiff was not difficult, rank and dangerous, but was a gentle and manageable horse.

Plaintiff charges in subparagraph 5(c) of his First Amended Complaint that the defendants failed to make reasonable investigation of the situation after plaintiff complained of difficulty with the horse, asked for defendants' advice based upon their superior knowledge and judgment, and knowing plaintiff would rely upon and be guided by any advice they gave. There is no evidence that plaintiff asked defendants or anyone else for advice concerning the horse provided for him. The whole occurrence took place within a very few minutes. The evidence shows that before the riding party left the area of the stable plaintiff began to rein the horse, the horse raised up and plaintiff slid off to the rear of the saddle. There is no evidence that defendants had any reason to know or believe that plaintiff would rely upon and be guided by the advice they gave to him.

Plaintiff charges in subparagraph 5(d) of his First Amended Complaint that defendants failed to assist or guide plaintiff when they knew the horse with which they had provided him was out of control. There is no evidence that defendants knew the horse was out of con-

trol. The evidence shows that defendant Margaret Roll was some distance away and saw plaintiff reining the horse tightly and showing off as an expert when all at once plaintiff slid off the horse and pulled the reins so tightly that the horse reared back on plaintiff in an attempt to respond to plaintiff's tightly pulled reins.

Plaintiff charges in subparagraph 5(e) of his First Amended Complaint that defendants provided plaintiff with a horse for riding which they knew, or should have known, was possessed of traits making said horse dangerous to ride. There is no evidence that the horse possessed such traits as alleged or was dangerous, but the evidence is to the contrary. There is no evidence that defendants knew or should have known such allegations to be true, but on the contrary that defendants knew the horse to be a gentle and safe horse to ride.

Plaintiff charges in subparagraph 5(f) of his First Amended Complaint that defendants provided him with a horse, which horse was rendered rank, vicious and dangerous due to overwork, mistreatment by a prior livery rider, or a physical ailment unknown to plaintiff, but which was known, or should have been known to defendants and each of them. There was absolutely no evidence to support that charge, but the evidence is to the contrary, namely that the horse provided to the plaintiff was in good health, good physical condition, not fatigued, was of a good temperament and was gentle and manageable at all times, even for children to ride, both before and after plaintiff's fall from the horse. The only instance in which the horse was known to have raised up was when defendant Margaret Roll, then eighteen (18) years of age, held the reins too tightly. No incident occurred as a result of that. When she loosened the reins the horse returned to normal posture. The owner of the horse as far back as seven (7) years ago testified to the gentle and manageable qualities of

the horse and his testimony was not disputed.

Plaintiff charges in subparagraph 5(g) of his First Amended Complaint that defendants failed to inform plaintiff of the propensities of the mount (horse) with which they provided him, after plaintiff had inquired and after these potentially dangerous and dangerous proclivities were known to the defendants and each of them. The evidence is that plaintiff made no such inquiries and the defendants had no knowledge of such dangerous proclivities of the horse because he had none, but was a gentle riding horse.

Plaintiff charges in subparagraph 5(h) of his First Amended Complaint that defendants failed to guide plaintiff to the riding trail after plaintiff paid them for the same. The facts are that the plaintiff fell off the horse before the riding party left the vicinity of the stables for the horses and was taken in an ambulance to a hospital for his injury and that the riding party thereafter proceeded to go on the riding trail and that the failure of plaintiff to go on the riding trail was the fault of plaintiff and not that of defendants. Furthermore, the charge for the ticket was an inconsequential fee and at no time did plaintiff ever make a request for a refund for his purchased ticket or offer to surrender it for a refund.

Plaintiff charges in subparagraph 5(i) of his First Amended Complaint that defendants failed to take any steps or reasonable steps to permit plaintiff to dismount safely from the uncontrollable horse with which he was provided. Again, the evidence shows that plaintiff fell off the horse within moments after he mounted the horse and there was no opportunity for defendants or any of the plaintiff's friends who were near him to take steps, reasonable or otherwise, to aid him to dismount the hourse. Also, the evidence shows the horse to have been under plaintiff's control and not uncontrollable. The evidence shows his

friends came to his aid immediately after his injury and that he was taken to a hospital promptly.

Plaintiff charges in subparagraph 5(j) of his First Amended Complaint that defendants provided him with a horse whose mouth was sore, when they knew, or should have known, this condition would make the horse dangerous and uncontrollable. The evidence showed that after plaintiff held the reins so tightly that the horse raised his front legs and plaintiff fell off from the rear of the horse and that thereafter the horse's mouth was bleeding, though the bits and bridle were in proper order and further that the horse continued to be ridden all day long. The evidence shows the horse was not uncontrollable because of a sore mouth but because of the treatment of tight reining by the plaintiff while he was being an exhibitionist, demonstrating his equestrian skill.

Plaintiff charges in subparagraph 5(k) of his First Amended Complaint that defendants failed to discover that their horse's lip was caught in the curb chain of the tack with which they outfitted their horses. The evidence reveals that whatever were the facts about the horse's lip being caught in the curb chain existed after plaintiff's reining of the horse and there is no evidence of its existence prior to plaintiff's injury or that such a condition caused or contributed to the horse rising up when it was tightly reined by plaintiff or that such condition caused or contributed to the injury of the plaintiff.

Plaintiff charges in subparagraph 5(l) of his First Amended Complaint that defendants failed to use reasonably safe procedures for guiding trail ride groups from the stable area to the trail itself. The evidence showed to the contrary. The procedure used by defendants was reasonable and safe and the usual and customary procedure used by riding stables. Furthermore, the plaintiff was not injured on the riding trail but in the stable area before the plaintiff reached any riding trail.

Plaintiff charges in subparagraph 5(m) of his First Amended Complaint that defendants failed to provide adequate supervision for their guided trail rides. Again, the evidence shows to the contrary and that defendants provided two guides for a small party and that such procedure was and is safe and adequate and in accord with the custom and usage for guided trail rides. Again, the plaintiff was not injured on the trail but in the stable area before he ever reached the trail.

It has been necessary for the Court to be repetitive and redundant in dealing with the foregoing facts because of the excessively lengthy and detailed charges made against defendants by the plaintiff, charges which are duplicitious, repetitive, overlapping and redundant. The Court will now consider the state of law in Illinois concerning the facts in this case as considered most favorable to the plaintiff.

■ The plaintiff made identical charges against defendant Margaret Roll, and her employer, defendant Green Acres Farm, Inc. There was no evidence offered against defendant Green Acres Farm, Inc., that was not likewise offered again Margaret Roll, who was actually present when plaintiff was injured and was in charge of the trail guide party. The jury found the defendant Margaret Roll not guilty. Since the agent in charge of the trail ride party was found not guilty it follows *ipso facto* that her employer was not guilty. That is the law of Illinois as set forth in *Devore v. Toledo, Peoria and Western Railroad,* 30 Ill.App.2d 409, 174 N.E.2d 883. In that case Clyde Devore was killed when the automobile he was driving collided with a locomotive owned by the Toledo, Peoria and Western Railroad and manned by an engineer and fireman, all three of whom were sued on a charge of negligence. Both individuals, the agents of Toledo, Peoria and Western Railroad were found not guilty and Toledo, Peoria and Western Railroad was found guilty by the jury. The appel-

late court reversed the verdict. The appellate court at page 412, 174 N.E.2d at at page 884 in the case stated:

"The rule is axiomatic that if the employees are free from negligence in this regard, the railroad is likewise free from negligence in this regard. *Rogina v. Midwest Flying Service*, 325 Ill.App. 588, 60 N.E.2d 633. It follows therefore, that a verdict finding the fireman and engineer not guilty of failing to ring a bell, failing to blow a whistle, operating the train at an excessive speed, exonerates the railroad from liability for such alleged negligence."

Furthermore the jury completely disregarded the instruction that individuals and corporations have equal standing before the law and are entitled to equal treatment and they found the individual defendant Margaret Roll, not guilty when she was the agent of Green Acres Farm, Inc., and then found the corporate defendant, Green Acres Farm, Inc., guilty and assessed damages of $40,000.-00 against it in the jury verdict. Respondeat superior does not apply to the corporate defendant Green Acres Farm, Inc., and the verdict of the jury finding it guilty and assessing $40,000.00 damages against it must be set aside.

■ Under Illinois law a plaintiff who seeks to recover from a defendant who owns and furnishes horses for riders has a burden of proof to show that the owner has knowledge of any dangerous or vicious propensity or conduct of a horse before he can recover on account of being thrown from such horse. That is the law in Illinois concerning domestic animals except in instances where the law has been changed by statute, as in the case of dogs. Before the change in the statute concerning dogs the Illinois Supreme Court in *Domm v. Hollenbeck*, 259 Ill. 382, 102 N.E. 782, stated the law applicable to injury by domestic animals:

"The owner or keeper of a domestic animal of a species not inclined to mischief, such as dogs, horses, and oxen, is not liable for any injury committed by it to the person of another, unless it be shown that the animal had a mischievous propensity to commit such an injury, and the owner had notice of it, or that the injury was attributable to some other neglect on his part. If the owner of a vicious animal knows its character and disposition to commit injury to mankind he is liable for all injuries it may inflict."

In *Ward v. Danzeizen*, 111 Ill.App. 163, the court stated:

"The owner of domesticated animals is not liable for injury done by them unless he is proved to have notice of the inclination of the particular animal complained of to commit such injuries, there being no presumption that animals of that species are vicious or dangerous."

In the case of *O'Donnell v. Holdorf*, 304 Ill.App. 442, 26 N.E.2d 653, the court was confronted with a case similar to the one at bar, except that there the horse threw the rider, who like the plaintiff in this case was an experienced rider. There the plaintiff made the same contentions as Arthur J. Allen makes here. There the plaintiff obtained a verdict in his favor by the jury. On appeal the verdict was reversed for there was no evidence introduced at the trial that the horse had any bad habits which made him unsafe for persons to ride. At page 456, 26 N.E.2d at page 659 of its opinion the court stated:

"We think pulling the rein, as plaintiff says he did, more nearly accounts for the actions of the horse than any innate viciousness on the part of the horse."

Further authorities that support the Illinois law above set forth are found in 15 A.L.R.2d 1313 and *Dam v. Lake Aliso Riding School*, 6 Cal.2d 395, 57 P.2d 1315.

The facts and the law as discussed before should ordinarily end this matter. However, the Court must further consider the outrageous fraud that the plaintiff sought to perpetrate upon the de-

fendants, the Court and even his own counsel. Plaintiff claims loss of income. Defendants requested copies of plaintiff's income tax returns for the years 1971, 1972 and 1973. Plaintiff furnished to his counsel copies of what he represented were his income tax returns for those years. He represented to his counsel that they were true and correct. Plaintiff's counsel, relying upon the representation of plaintiff then delivered the same to counsel for defendants. Counsel for defendants questioned the authenticity of the returns furnished to him, served notice upon counsel for plaintiff and moved to direct the plaintiff to authorize the Director of Internal Revenue of Atlanta, Georgia to furnish true and correct copies of his income tax returns for the years 1971, 1972 and 1973 to defendants' counsel, which motion was granted and such authorization was signed by the plaintiff. Atlanta, Georgia was and is the residence of the plaintiff.

Upon trial the plaintiff testified that he was in the upholstering business, but he had no books and records to support his claim except loose invoices and his check book. Defendants objected to them as original records. Counsel for plaintiff stated that the next best records plaintiff had were copies of his income tax returns that plaintiff had furnished to counsel for defendants. Counsel for defendants had already marked them as defendants' Exhibits 4, 5 and 6. He exhibited them to counsel for plaintiff who then offered them into evidence and they were received without objection.

Exhibit 4 represented that plaintiff had taxable income in 1971 in the amount of $15,778.00; exhibit 5 showed that he had taxable income of $20,586.00 in 1972; and exhibit 6 showed taxable income of $8,544.00 for the year 1973. That was the year of plaintiff's injury. Plaintiff verified these in open court as being true and correct copies of his income tax returns for the years 1971, 1972 and 1973.

Upon cross examination counsel for the defendant offered in evidence Exhibit 7, a certified copy of the income tax return of the plaintiff, Arthur J. Allen, and his wife, Eddy, for the year 1971. When confronted with the foregoing document, the plaintiff acknowledged that it was a true copy of the income tax return that he actually signed and filed with the Director of Internal Revenue for the year of 1971. He further stated that the copy of his 1971 income tax return that he furnished to defendants' counsel had never been filed but that he had an accountant reconstruct his income tax return and that he had planned to file an amended tax return for that year. The true income tax return that he filed reflected that he had earned wages from Sylvania and his wife Eddy had earned wages from Southern Bell totaling $13,565.00, and it reflected no income whatsoever from plaintiff's business as he claimed in the copy of his purported income of $15,778.00 from his business that he supplied to his counsel for use in this case.

Upon further cross examination, defendants' counsel exhibited defendants' Exhibit 8 which was a certified copy of a search made by the Director of Internal Revenue from Atlanta, Georgia, in which it reflected that no income tax return was filed by plaintiff for the year 1972. Defendants' Exhibit 9 reflected that no income tax return was filed by plaintiff for the year 1973. Plaintiff then admitted under oath that the copy of an income tax return for the year 1972 showing taxable income for that year in the amount of $20,536.00, and the copy of an income tax return showing taxable income of $8,544.00 were not copies of income tax returns filed by him for the years 1972 and 1973, as represented to his counsel, to counsel for the defendants and to this Court but were, in fact, documents prepared by an accountant and that he expected to file them as late income tax returns because he found out that he was under investi-

gation by the Internal Revenue Office for filing a false income tax return for 1971, and for failure to file income tax returns for the years of 1972 and 1973.

From all of the facts the Court finds that plaintiff deliberately prepared and furnished false income tax returns for the years 1971, 1972 and 1973 with the fraudulent intent to use them in this case to persuade the jury that he had suffered a far greater loss than he had, in fact, suffered.

Not content with his fraudulent scheme as aforesaid, the plaintiff led his attorney to believe that his personality had been altered as a result of the injury to him and that he had as a result lost his wife in a divorce that had since occurred. His counsel questioned him about his domestic problems and he testified that he had no problems until after his injury herein sued upon. Then upon cross examination he was shown, by counsel for defendants, a certified copy of a complaint for divorce dated May 23, 1973, and filed in the Superior Court of Fulton County, Georgia on the same day. The allegations of his wife were filed more than three months before the injury upon which this suit is founded had occurred and they belie plaintiff's testimony in this cause that he had a happy family relationship with his wife before July 15, 1973. Service of process occurred upon plaintiff's adult daughter with whom he was residing on May 30, 1973 and eventually a divorce was awarded to plaintiff's wife upon the allegations by his wife that, among other allegations, his "apparent inability or unwillingness to assume the normal responsibilities of a husband and father." As part of the divorce proceedings the plaintiff entered into an agreement with his wife dated March 28, 1974, which agreement was signed by both the plaintiff and his wife, Eddy Louise Lewis Allen, described as First Party and Arthur J. Allen, Jr., described as Second Party, and the agreement contained the following recital:

"WHEREAS, First Party and Second Party lived together as husband and wife until or on about August 25, 1971, when, because of unpleasant circumstances arising between the parties, they separated, and are now living in a bona fide state of separation."

The credibility of plaintiff, Arthur J. Allen, was so completely and devastatingly destroyed that no consideration whatsoever can be given to his testimony.

Wherefore this Court does hereby continue under advisement the motion of defendant, Green Acres Farm, Inc., for a new trial for the reasons heretofore assigned.

The Court finds that the verdict of the jury finding defendant, Margaret Roll, not guilty is fully supported by the evidence and that her motion for a new trial and all of her other motions are moot and are therefore denied.

Judgment upon the verdict of the jury finding defendant, Margaret Roll, not guilty is hereby entered in favor of defendant, Margaret Roll, and against plaintiff, Arthur J. Allen, who shall take nothing from his suit herein. Judgment is hereby entered in favor of defendant, Margaret Roll, for her costs against the plaintiff, Arthur J. Allen.

It is further ordered that the motions of the defendant, Green Acres Farm, Inc., for a directed verdict at the end of the plaintiff's case and at the end of all of the evidence and its motion for a judgment notwithstanding the verdict be and the same are hereby granted and the verdict of the jury finding defendant, Green Acres Farm, Inc., guilty and assessing damages against it in the amount of $40,000.00 is hereby vacated, set aside and declared null and void.

Now, pursuant thereto it is further ordered that defendant, Green Acres Farm, Inc., do have judgment against plaintiff, Arthur J. Allen, who shall take nothing from his suit herein. It is further ordered that defendant, Green Acres Farm, Inc., have judgment for its costs against plaintiff, Arthur J. Allen.